# EXHIBIT A



## Notice of Service of Process

**null / ALL**
**Transmittal Number: 26257433**
**Date Processed: 01/24/2023**

| | |
|---|---|
| **Primary Contact:** | Nathan Ganfield<br>Johnsonville, LLC<br>N6928 Johnsonville Way<br>Sheboygan Falls, WI 53085 |
| **Electronic copy provided to:** | Janell Bohn<br>Cassandra McCauley |

| | |
|---|---|
| **Entity:** | Johnsonville, LLC<br>Entity ID Number 3854717 |
| **Entity Served:** | Johnsonville LLC |
| **Title of Action:** | Erin Edwards vs. Johnsonville LLC |
| **Matter Name/ID:** | Erin Edwards vs. Johnsonville LLC (13515058) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Cook County Circuit Court, IL |
| **Case/Reference No:** | 2023CH00051 |
| **Jurisdiction Served:** | Illinois |
| **Date Served on CSC:** | 01/23/2023 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Zimmerman Law Offices, P.C.<br>312-440-0020 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

FILED
1/3/2023 4:39 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH00051
Calendar, 9
20879798

| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (12/01/20) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Erin Edwards,

Plaintiff(s)

v.

Johnsonville LLC

Defendant(s)

Johnsonville LLC

Address of Defendant(s)

Case No. **2023CH00051**

**Please serve:**
**Johnsonville LLC**
**c/o Its Registered Agent**
**Illinois Corporation Service Company**
**801 Adlai Stevenson Drive**
**Springfield, Illinois 62703**

Please serve as follows (check one): ○ Certified Mail ◉ Sheriff Service ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

To file your written appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE.** You will need: a computer with internet access; an email address; a completed Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp; and a credit card to pay any required fees.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

Summons - Alias Summons _____ (12/01/20) CCG 0001 B

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

Please call or email the appropriate clerk's office location (on Page 3 of this summons) to get your court hearing date AND for information whether your hearing will be held by video conference or by telephone. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**NOTE:** Your appearance date is NOT a court date. It is the date that you have to file your completed appearance by. You may file your appearance form by efiling unless you are exempted.

A court date will be set in the future and you will be notified by email (either to the email address that you used to register for efiling, or that you provided to the clerk's office).

**CONTACT THE CLERK'S OFFICE** for information regarding **COURT DATES** by visiting our website: cookcountyclerkofcourt.org; download our mobile app from the AppStore or Google play, or contact the appropriate clerk's office location listed on Page 3.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

◉ Atty. No.: 34418

○ Pro Se 99500

Name: Zimmerman Law Offices, P.C.

Atty. for (if applicable):

Plaintiff

Address: 77 West Washington Street, Suite 1220

City: Chicago

State: IL  Zip: 60602

Telephone: (312) 440-0020

Primary Email: firm@attorneyzim.com

Witness date _____

1/3/2023 4:39 PM IRIS Y. MARTINEZ

IRIS Y. MARTINEZ, Clerk of Court

☐ Service by Certified Mail: _____

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 2 of 3

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:**  CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:**  CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:**  DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:**  LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:**  ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

FILED
1/3/2023 4:39 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH00051
Calendar, 9
20879798

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CHANCERY DIVISION

| | | |
|---|---|---|
| **ERIN EDWARDS**, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. **2023CH00051** |
| **JOHNSONVILLE LLC**, | ) ) | |
| Defendant. | ) ) | Jury Trial Demanded |

# CLASS ACTION COMPLAINT

Plaintiff ERIN EDWARDS ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through counsel at Zimmerman Law Offices, P.C., brings this Class Action Complaint ("Complaint") against Defendant JOHNSONVILLE LLC ("Defendant"), as follows:

## INTRODUCTION

1.     Plaintiff brings this suit on behalf of herself and a Class (defined below) of similarly situated individuals to stop Defendant from misrepresenting that its bratwurst food products (the "Brats") contain "100% premium pork," when, in fact, Defendant's Brats are encased in beef collagen. In addition, Plaintiff, on behalf of herself and the proposed Class, seeks restitution and other equitable, injunctive, declaratory, and monetary relief as set forth below.

2.     Pursuant to the Federal Food, Drug and Cosmetic Act ("Federal FDCA"), a food shall be considered "misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).

3.      Pursuant to the Illinois Food, Drug and Cosmetic Act ("Illinois FDCA"), a food is "misbranded" if "its labeling is false or misleading in any particular." *See* 410 ILCS 620/11(a).

4.      Defendant manufactures, markets, distributes, and sells the Brats. By misrepresenting the key ingredients in its Brats, Defendant engaged, and still engages in, business practices that are unlawful, unfair, and deceptive because consumers reasonably rely on Defendant's material misrepresentations to their detriment.

## PARTIES

5.      Plaintiff ERIN EDWARDS is a natural person and resident and citizen of Florida.

6.      Defendant JOHNSONVILLE LLC is a Delaware limited liability company with its principle place of business in Wisconsin. Defendant sells the Brats nationwide, including in Cook County and throughout the state of Illinois, and manufactures the Brats at its factory located in Illinois.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), section 2-209(a)(7) (the making or performance of any contract or promise substantially connected with this State), section 2-209(b)(4) (corporation doing business within this State), and section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).

8.      Venue is proper in this County pursuant to 735 ILCS 5/2-101, because many of the acts and transactions giving rise to this action occurred in this County. Defendant is (a) authorized to conduct business in this County and has intentionally availed itself of the laws and markets within this County through the distribution and sale in this County of the Brats at issue in this case;

(b) conducts substantial business in this County; and (c) is subject to personal jurisdiction in this County.

## FACTUAL ALLEGATIONS

### *An Overview of Sausage Making*

9.     Sausage making is one of the oldest forms of food preservation known to mankind, as it is an effective way to economize and preserve meat that cannot be consumed fresh at slaughter.[1]

10.     Historically, "the primary ingredients of sausage were the parts of the animal carcasses that could not be used in other ways," such as the intestines and less-desirable cuts of meat.[2] As such, sausages traditionally were encased in the intestines of the animal from which the sausage meat was derived.

11.     In the present day, many sausages still utilize so-called "natural" casings, which are "made from the sub mucosa of the intestines of meat animals (beef, sheep, and swine)."[3] However, sausages can also be made using "collagen" casings, which "are generally made from collagen derived from animal hides" (usually beef or pork hides), instead of from intestines.[4]

12.     Given the traditional association between sausage meat and the material used to encase it, consumers today, by default, expect that sausages will be encased in natural casings derived from the same animal from which the sausage is made.

13.     For this reason, federal regulations promulgated by the United States Department of Agriculture ("USDA") require sausage manufactures to clearly "identify the type of meat or poultry from which the casings were derived, if the casings are from a different type of meat or

---

[1] https://www.ndsu.edu/agriculture/sites/default/files/2022-10/fn176.pdf
[2] https://www.ndsu.edu/agriculture/sites/default/files/2022-10/fn176.pdf
[3] https://ask.usda.gov/s/article/What-are-casings-made-of
[4] https://ask.usda.gov/s/article/What-are-casings-made-of

poultry than the encased meat or poultry." 9 C.F.R. § 317.8(b)(37). Similarly, the USDA's regulations require that "the labels of sausages encased in regenerated collagen casings[] disclose this fact on the product label." 9 C.F.R. § 317.8(b)(38).

### *Food Labeling Requirements*

14.     The contents and representations on food packaging are subject to extensive state and federal regulation. At the federal level, the United States Food and Drug Administration ("FDA")—like the USDA—has promulgated hundreds of regulations regarding food labeling, pursuant to its authority under the Federal FDCA—codified as 21 U.S.C. §§ 301, *et seq.* State laws regarding food labeling largely mirror and adopt the statutory requirements of the Federal FDCA, as well as the regulatory requirements promulgated pursuant thereto by the FDA. In Illinois, these standards are set forth in the Illinois FDCA—codified as 410 ILCS 620/1, *et seq.*— and the regulations promulgated pursuant thereto.[5]

15.     For example, the regulations promulgated under the FDCA state that "the labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling." 21 C.F.R. § 101.18(b).

### *Defendant's Brats*

16.     Defendant manufactures, distributes, advertises, markets, and sells various types of sausages, including the Brats at issue in this case.

---

[5] Since federal law is largely duplicative of state law relative to the food labeling standards discussed below, Plaintiff will refer to the Federal FDCA and the Illinois FDCA, collectively, as the "Federal Food, Drug and Cosmetic Act," unless otherwise noted.

17. As the manufacturer of the Brats, Defendant determined, knows of, and is responsible for the ingredients contained in each package of the Brats.

18. Defendant also created, developed, reviewed, authorized, and is responsible for the textual and graphic content on the packaging of the Brats, including the representations contained thereon. Each package of the Brats contains standardized labeling created, developed, reviewed, and authorized by Defendant. As such, Defendant knows, created, developed, reviewed and is responsible for the representations contained on each package of the Brats.

19. The front of each package of the Brats prominently displays the words "MADE WITH 100% PREMIUM PORK", as shown below:



20.     This representation, in conjunction with the fact that, as noted above, sausage casings are expected to be made from the same animal from which the meat inside is derived, leads consumers to believe that the Brats are both filled and encased with pork.

21.     In other words, a reasonable consumer would understand the packaging of the Brats as representing that the Brats are both filled and encased with pork and *only* pork. *E.g., Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020) ("Deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used" from the perspective of a "reasonable consumer" and "in touch with real consumer behavior.").

22.     Contrary to Defendant's representation that the Brats are both filled and encased with pork (and only pork), the Brats are actually encased using beef collagen.

23.     In addition to defying the commonsense proposition that a food touted as being "MADE WITH 100% PREMIUM PORK" would, in fact, only contain pork products, the Brats' labeling renders them misbranded under the FDA's regulations. Indeed, as noted above, 21 C.F.R. § 101.18(b) expressly acknowledges that it is misleading to tout the presence of one ingredient in a way that suggests the absence of other ingredients, "even though the names of all such ingredients are stated elsewhere in the labeling."

24.     The fact that the Brats are misbranded under state and federal law further demonstrates that the Brats' labeling is false and misleading to reasonable consumers. *See* 21 U.S.C. § 343(a)(1); 410 ILCS 620/11(a).

25.     Defendant willfully misrepresented that its Brats are both filled and encased with pork (and only pork) knowing that consumers, including Plaintiff and Class members, would reasonably rely on Defendants' representations on the Brats' labels.

26.     The presence of the beef collagen in the Brats has a material bearing on consumers' decision to buy them.

27.     For example, in the Hindu religion, cows are held to be the most sacred of all animals, and most Hindus do not eat beef at all. In fact, in India—which has an approximately 80% Hindu population—"a citizen can be sent to jail for killing or injuring a cow."[6] For the same reason, India is the only country in the world where McDonald's—the world's largest consumer of beef—does not serve beef (and instead makes its burgers with lamb meat).[7]

28.     Other consumers seek to avoid eating beef in light of several scientific studies conducted over the past few decades which have associated the consumption of red meat with "increased risks of diabetes, cardiovascular disease, and certain cancers," as well as "an elevated risk of mortality."[8]

29.     The materiality of the touted lack of beef in the Brats is also evidenced by the fact that Defendant prominently claims that the Brats are "MADE WITH 100% PREMIUM PORK." Indeed, given the amount of resources that nationwide food producers—such as Defendant— devote to market research, the inclusion of such a claim must motivate consumers' purchasing decisions, or else it would not be included.

30.     Prior to purchasing the Brats, Plaintiff and members of the Class were repeatedly exposed to, saw, read, and understood Defendant's misrepresentations and omissions regarding the Brats, including the representation that the Brats contained "100% PREMIUM PORK," which was made on the front label of each package of the Brats.

---

[6] https://www.pbs.org/wnet/nature/holy-cow-hinduisms-sacred-animal/1811/
[7]      https://www.washingtonpost.com/archive/politics/1996/11/04/its-lamb-burger-not-hamburger-at-beefless-mcdonalds-in-new-delhi/e22d7821-5c07-4407-bec7-4c8741c111c5/
[8] https://www.nih.gov/news-events/nih-research-matters/risk-red-meat

31. Consumers reasonably rely on Defendant's misrepresentations and omissions that the Brats contain pork (and only pork).

32. Defendant intended that Plaintiff and members of the Class rely on the standardized representations contained on the packages of the Brats, including the representation that the Brats contained "100% PREMIUM PORK."

33. In reliance on Defendant's misrepresentations and omissions that the Brats contain pork (and only pork), Plaintiff and members of the Class reasonably believed that the Brats were encased in pork-derived casings.

34. Based on their reasonable belief that the Brats were encased in pork-derived casings, Plaintiff and members of the Class were willing to purchase the Brats.

35. As a result of these reasonable beliefs, Plaintiff and members of the Class purchased the Brats.

36. Had Plaintiff and Class members known the truth—*i.e.*, that the Brats were, in fact, encased in beef collagen casings—they would not have been willing to purchase them at all.

37. Given the prominent representation that the Brats contained "100% PREMIUM PORK"—which was made on the Brats' front label—Plaintiff and members of the Class, acting as reasonable consumers, had no reason to question what type of animal the Brats' casings were derived from, and were unaware that the Brats were encased in beef collagen casings when they purchased the Brats. *E.g.*, *Bell*, 982 F.3d at 477 ("The reasonable consumer standard does not presume, at least as a matter of law, that reasonable consumers will test prominent front-label claims by examining the fine print on the back label."); *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40-41 (1st Cir. 2019) (a reasonable consumer could interpret the words "hazelnut crème" on coffee packaging to represent that the product contained actual hazelnuts, even though hazelnuts were

8

not included in ingredient list); 21 C.F.R. § 101.18(b) (noting that it is misleading to label a food

in a manner "which includes or suggests the name of one or more but not all such ingredients, even

though the names of all such ingredients are stated elsewhere in the labeling").

38.     As a direct and proximate result of Defendant's misrepresentations and omissions

concerning the Brats—*e.g.*, that the Brats were both filled and encased with pork (and only pork)—

Plaintiff and Class members purchased the Brats.

39.     Therefore, Plaintiff and Class members were harmed in the form of the monies they

paid for the Brats which they would not otherwise have paid had they known the truth.

### *Facts Relevant to Plaintiff*

40.     On November 27, 2022, Plaintiff purchased one package of the Brats at a local

grocery store.  The retail price for this purchase was $5.19, and Plaintiff paid that amount to

purchase the Brats.

41.     Prior to purchasing the Brats, Plaintiff saw, read, and understood the information

contained on the front label of the package of the Brats, including the representation that the Brats

contained "100% PREMIUM PORK."

42.     In reasonable reliance on Defendant's misrepresentations and omissions that the

Brats contain pork (and only pork), Plaintiff reasonably believed that the Brats were encased in

pork-derived casings.

43.     Plaintiff was only willing to buy the Brats that she purchased because she believed

that they were encased in pork-derived casings.  Plaintiff would not have been willing to buy the

Brats had she known that they were encased in beef collagen casings.

44.     Based on her belief that the Brats were both filled and encased with pork (and only

pork), Plaintiff purchased the Brats.

9

45.     After purchasing the Brats, Plaintiff discovered that the Brats that she purchased were encased in beef collagen casings, contrary to Defendant's misrepresentations and omissions.

46.     The Brats that Plaintiff purchased were rendered worthless, as Plaintiff is unwilling to eat pork sausages that are encased in beef collagen casings.

47.     Had Plaintiff known that the Brats she purchased were encased in beef collagen casings instead of in pork-derived casings, she would not have purchased the Brats.

48.     As a direct and proximate result of Defendant's misrepresentations and omissions—*i.e.*, that the Brats were both filled and encased with pork (and only pork)—Plaintiff was harmed in the form of the monies she paid for the Brats that she would not otherwise have paid had she known the truth.

49.     Plaintiff brings this action on behalf of herself, and a Class of similarly situated individuals, seeking recovery of the damages they incurred as a result of Defendant's deception.

## CLASS ALLEGATIONS

50.     **Class Definition**: Plaintiff brings this action pursuant to 735 ILCS 5/2-801, on behalf of a nationwide class of similarly situated individuals and entities ("the Class"), defined as follows:

> All persons in the United States who purchased the Brats.

Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

51.     **Numerosity**: The Class is so numerous that joinder of individual members would be impracticable. While the exact number of Class members is presently unknown and can only

be ascertained through discovery, Plaintiff believes that there are thousands of Class members, if not more. This is based on that fact that "Johnsonville is the largest-selling sausage brand in the United States, with more than $1 billion in annual revenue."[9]

52.    **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiff and members of the putative Class, which predominate over any individual issues, including:

a.    Whether the Brats are encased in beef collagen casings;

b.    Whether Defendant misrepresented to Plaintiff and Class members that the Brats are both filled and encased with pork (and only pork);

c.    Whether Defendant omitted and concealed the fact that the Brats are encased in beef collagen casings;

d.    The extent and amount of Plaintiff's and Class members' damages;

e.    Whether Defendant's conduct violates the Federal FDCA;

f.    Whether Defendant's conduct violates the Illinois FDCA;

g.    Whether Defendant's conduct constitutes unfair or deceptive business practices under the Illinois Consumer Fraud and Deceptive Trade Practices Act;

h.    Whether Defendant violated the Consumer Fraud and Deceptive Trade Practices Acts of the fifty states and the District of Columbia; and

i.    Whether Defendant's conduct resulted in Defendant unjustly retaining a benefit to the detriment of Plaintiff and Class members, and violated the fundamental principles of justice, equity, and good conscience.

53.    **Fair and Adequate Representation**: Plaintiff's claims are typical of the claims of the proposed Class. All claims are based on the same legal and factual issues, to wit: Defendant's misrepresentations and omissions concerning the Brats. Plaintiff will fairly and adequately represent and protect the interests of the proposed Class, and Plaintiff does not have any interests

---

[9]    https://www.jsonline.com/story/money/business/2017/06/02/jagler-the-question-answer-johnsonvilles-stayer/362202001/

antagonistic to those of the proposed Class. Plaintiff has retained competent counsel experienced in the prosecution of this type of litigation. The questions of law and fact common to the proposed Class members predominate over any questions affecting only individual Class members.

54.     **Appropriate Method for Fair and Efficient Adjudication**: A class action can best secure the economies of time, effort and expense, and promote uniformity. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. Individual actions are not economically feasible and it is unlikely that individual members of the Class will prosecute separate actions. The trial and the litigation of Plaintiff's claims are manageable.

**COUNT I**
**(On Behalf of Plaintiff and the Class)**
**Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act**
**(815 ILCS 505/1, *et seq.*)**

55.     Plaintiff repeats and re-alleges the allegations of the paragraphs 1-54 with the same force and effect as though fully set forth herein.

56.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, provides protection to consumers by mandating fair competition in commercial markets for goods and services.

57.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS 505/2.

12

58.     The ICFA applies to Defendant's acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

59.     Defendant is such a "person," as defined by 815 ILCS 505/1(c).

60.     Plaintiff and each member of the Class are "consumers," as defined by 815 ILCS 505/1(e), because they purchased the Brats.

61.     The Brats are "merchandise," as defined by 815 ILCS 505/1(b).

62.     Defendant made, and continues to make, false and fraudulent statements, and misrepresented, concealed, and omitted material facts, regarding the Brats, including the misrepresentation that the Brats are both filled and encased with pork (and only pork)—*i.e.*, the Brats are "made with 100% premium pork"—and the omission that the Brats are encased in beef collagen casings.

63.     Defendant's misrepresentations and omissions regarding the Brats, and Defendant's concealment of the fact that the Brats are encased in beef collagen casings, constitute deceptive and unfair acts or practices prohibited by the ICFA.

64.     Defendant's aforementioned misrepresentations and omissions possess the tendency or capacity to mislead and create the likelihood of consumer confusion. *Unique Concepts, Inc. v. Manuel*, 669 F. Supp. 185, 191 (N.D. Ill. 1987).

65.     Defendant's aforementioned misrepresentations and omissions were used or employed in the conduct of trade or commerce, namely, the marketing, sale, and distribution of Brats to Plaintiff and the Class.

66.     Defendant's aforementioned misrepresentations and omissions are unfair business practices because they offend public policy and/or cause substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417–18 (2002).

13

67.     Defendant's aforementioned conduct is deceptive and unlawful because it violated section 343(a)(i) of the FDCA and section 620/11(a) of the Illinois FDCA.

68.     Defendant intended that Plaintiff and Class members rely on the aforementioned false statements, misrepresentations, and omissions of material fact in purchasing the Brats.

69.     Plaintiff and Class members reasonably relied on Defendant's misrepresentations and omissions when they purchased the Brats.

70.     Acting as reasonable consumers, had Plaintiff and Class members been aware of the true facts regarding the Brats and the use of beef collagen casings, they would have declined to purchase the Brats.

71.     Plaintiff and Class members suffered injuries in fact—*i.e.*, the loss of the money that they paid for the Brats under the belief that the Brats were both filled and encased with pork (and only pork), as opposed to beef collagen casings.

72.     Acting as reasonable consumers, Plaintiff and Class members could not have avoided the injuries suffered by purchasing the Brats because a reasonable consumer would believe that a sausage product prominently labeled on the front of the package as being "100% PREMIUM PORK" is both filled and encased with pork (and only pork). *E.g.*, *Bell*, 982 F.3d at 477; *Dumont*, 934 F.3d at 40-41; 21 C.F.R. § 101.18(b).

73.     As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and members of the Class suffered damages by purchasing the Brats because they would not have purchased the Brats had they known the truth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ERIN EDWARDS, individually, and on behalf of the Class, prays for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, and certifying the Class defined herein;

B.   Designating Plaintiff as representative of the Class and her undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.   Awarding Plaintiff and the Class damages equal to the amount of actual damages that they sustained;

E.   Awarding Plaintiff and the Class attorneys' fees and costs, including interest thereon, as allowed or required by law; and

F.   Granting all such further and other relief as the Court deems just and appropriate.

## COUNT II
### (On Behalf of Plaintiff and the Class)
### Violation of the Consumer Fraud and Deceptive Trade
### Practices Acts of the Various States and District of Columbia

74.   Plaintiff repeats and re-alleges the allegations in Paragraphs 1-54 with the same force and effect as though fully set forth herein.

75.   Plaintiff brings this Count individually, and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia for violations of the respective statutory consumer protection laws, as follows:

a.   the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq.*;

b.   the Alaska Unfair Trade Practices and Consumer Protection Act, AS § 45.50.471, *et seq.*;

c.   the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;

d.   the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq.*;

e.   the California Unfair Competition Law, Bus. & Prof. Code §§17200, *et seq.* and 17500 *et seq.*;

f.   the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.*;

15

g.     the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

h.     the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

i.     the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

j.     the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

k.     the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

l.     the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

m.     the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq.*;

n.     the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

o.     the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*;

p.     the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*;

q.     The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq.*;

r.     the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

s.     the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

t.     the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*;

u.     the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

v.     the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq.*;

w.     the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

x.     the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq.*;

y.     the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

z.     the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;

aa.     the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq.*;

bb.     the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq.*;

cc.     the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq.*;

dd.     the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq.*;

ee.     the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq.*;

ff.     the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq.*;

gg.     the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq.*;

hh.     the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq.*;

ii.     the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq.*;

jj.     the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq.*;

kk.     the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*;

ll.     the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq.*;

mm.     the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.*;

nn.     the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

oo.     the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq.*;

pp.     the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq.*;

qq.     the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

rr.     the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;

ss.     the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*;

tt.     the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

uu.     the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

17

vv.    the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.*;

ww.    the Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

xx.    the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq.*;

yy.    the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq.*; and

zz.    the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

76.    The Brats are a consumer good.

77.    Defendant made, and continues to make, false and fraudulent statements, and misrepresented, concealed, and omitted material facts, regarding the Brats, including the misrepresentation that the Brats are both filled and encased with pork (and only pork)—*i.e.*, the Brats are "made with 100% premium pork"—and the omission that the Brats are encased in beef collagen casings.

78.    Defendant's misrepresentations and omissions regarding the Brats, and Defendant's concealment of the fact that the Brats are encased in beef collagen casings, constitute deceptive and unfair acts or practices in trade or commerce.

79.    Defendant's aforementioned misrepresentations and omissions possess the tendency or capacity to mislead and create the likelihood of consumer confusion.

80.    Defendant's aforementioned misrepresentations and omissions were used or employed in the conduct of trade or commerce, namely, the marketing, sale, and distribution of Brats to Plaintiff and the Class.

81.    Defendant's aforementioned misrepresentations and omissions are unfair business practices because they offend public policy and/or cause substantial injury to consumers.

82.    Defendant's aforementioned conduct is deceptive and unlawful because it violated section 343(a)(i) of the FDCA.

18

83.     Defendant intended that Plaintiff and Class members rely on the aforementioned false statements, misrepresentations, and omissions of material fact in purchasing the Brats.

84.     Plaintiff and Class members reasonably relied on Defendant's misrepresentations and omissions when they purchased the Brats.

85.     Acting as reasonable consumers, had Plaintiff and Class members been aware of the true facts regarding the Brats and the use of beef collagen casings, they would have declined to purchase the Brats.

86.     Plaintiff and Class members suffered injuries in fact—*i.e.*, the loss of the money that they paid for the Brats under the belief that the Brats were both filled and encased with pork (and only pork), as opposed to beef collagen casings.

87.     Acting as reasonable consumers, Plaintiff and Class members could not have avoided the injuries suffered by purchasing the Brats because a reasonable consumer would believe that a sausage product prominently labeled on the front of the package as being "100% PREMIUM PORK" is both filled and encased with pork (and only pork). *E.g.*, *Bell*, 982 F.3d at 477; *Dumont*, 934 F.3d at 40-41; 21 C.F.R. § 101.18(b).

88.     As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and members of the Class suffered damages by purchasing the Brats because they would not have purchased the Brats had they known the truth

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ERIN EDWARDS, individually, and on behalf of the Class, prays for an Order as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, and certifying the Class defined herein;

19

B.   Designating Plaintiff as representative of the Class and her undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.   Awarding Plaintiff and the Class damages equal to the amount of actual damages that they sustained;

E.   Awarding Plaintiff and the Class attorneys' fees and costs, including interest thereon, as allowed or required by law; and

F.   Granting all such further and other relief as the Court deems just and appropriate.

## COUNT III
### (On Behalf of Plaintiff and the Class)
### Unjust Enrichment

89.   Plaintiff repeats and re-alleges the allegations in Paragraphs 1-54 with the same force and effect as though fully set forth herein.

90.   When a specific contract does not govern the relationship of the parties, and, therefore, no adequate remedy at law is applicable, an equitable remedy under a theory of unjust enrichment is available. *See, e.g., Guinn v. Hoskins Chevrolet*, 361 Ill.App.3d 575, 604 (1st Dist. 2005) (internal citations omitted).

91.   Unjust enrichment "is a condition that may be brought about by unlawful or improper conduct as defined by law[.]" *See, e.g., Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25 (quoting *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill.App.3d 1017, 1024 (3rd Dist. 2009); *Alliance Acceptance Co. v. Yale Insurance Agency, Inc.*, 271 Ill.App.3d 483, 492 (1st Dist. 1995)).

92.   To prevail on a claim of unjust enrichment, a plaintiff must prove: (1) "that the defendant has unjustly retained a benefit to the plaintiff's detriment," and (2) "that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good

20

conscience." *See, e.g., Cleary v. Philip Morris Inc.,* 656 F.3d 511, 518 (7th Cir.2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 160 (1989)).

93.     Defendant made, and continues to make, false and fraudulent statements, and misrepresented, concealed, and omitted material facts, regarding the Brats, including the misrepresentation that the Brats are both filled and encased with pork (and only pork)—*i.e.,* the Brats are made with "100% premium pork"—and the omission that the Brats are encased in beef collagen casings.

94.     Because Defendant is responsible for and controls the manufacturing, marketing, distribution, and sale of the Brats, Defendant knew that its misrepresentations and omissions regarding the Brats were false.

95.     Defendant knew that Plaintiff and Class members would rely on its misrepresentations and omissions concerning the Brats. Defendant also knew that Plaintiff and Class members would only be willing to purchase the Brats if they believed they were both filled and encased with pork (and only pork).

96.     Plaintiff and Class members reasonably relied on Defendant's misrepresentations and omissions when they purchased the Brats.

97.     Acting as reasonable consumers, Plaintiff and Class members could not have avoided the injuries suffered by purchasing the Brats because a reasonable consumer would believe that a sausage product prominently labeled on the front of the package as being "100% PREMIUM PORK" is both filled and encased with pork (and only pork). *E.g., Bell,* 982 F.3d at 477; *Dumont,* 934 F.3d at 40-41; 21 C.F.R. § 101.18(b).

98.     Acting as reasonable consumers, had Plaintiff and Class members been aware of the true facts regarding the Brats and the use of beef collagen casings, they would have declined to purchase the Brats.

99.     Plaintiff and Class members conferred a benefit on Defendant—*i.e.*, the money that they paid for the Brats under the belief that the Brats were both filled and encased with pork (and only pork).

100.    Defendant acquired and retained money belonging to Plaintiff and the Class as a result of its wrongful conduct—*i.e.*, misrepresenting that the Brats were both filled and encased with pork (and only pork), and concealing the fact that the Brats are encased in beef collagen casings. Defendant profited at the expense of Plaintiff and Class members in connection with each individual sale of the Brats because Plaintiff and Class members paid money for products that they would otherwise not have purchased had they known the truth.

101.    Defendant has unjustly received and retained a benefit at the expense of Plaintiff and the Class because Defendant unlawfully acquired its profits from selling Brats it knew did not comport with Plaintiff's and the Class members' expectations, as derived from the misrepresentations and omissions on the Brats' packaging.

102.    Defendant's retention of that benefit violates the fundamental principles of justice, equity, and good conscience because Defendant misled Plaintiff and the Class into falsely believing that the Brats were both filled and encased with pork (and only pork), in order to unjustly receive and retain a benefit.

103.    Under the principles of equity, Defendant should not be allowed to keep the money belonging to Plaintiff and the members of the Class because Defendant has unjustly received it as a result of Defendant's unlawful actions described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ERIN EDWARDS, individually, and on behalf of the Class, prays

for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, and certifying the Class defined herein;

B.     Designating Plaintiff as representative of the Class and her undersigned counsel as Class Counsel;

C.     Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.     Ordering disgorgement of any of Defendant's ill-gotten gains and awarding those amounts to Plaintiff and the Class members as compensatory damages;

E.     Awarding Plaintiff and the Class attorneys' fees and costs, including interest thereon, as allowed or required by law; and

F.     Granting all such further and other relief as the Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all counts so triable.

Plaintiff ERIN EDWARDS, individually, and on behalf of all others similarly situated,

By: s/ Thomas A. Zimmerman, Jr.

Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Sharon A. Harris
*sharon@attorneyzim.com*
Matthew C. De Re
*matt@attorneyzim.com*
Jeffrey D. Blake
*jeff@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602

23

(312) 440-0020 telephone
(312) 440-4180 facsimile
Firm ID No.: 34418
www.attorneyzim.com

Counsel for Plaintiff and the putative Class

FILED
1/3/2023 4:39 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH00051
Calendar, 9
20879798

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – CHANCERY DIVISION**

| | | |
|---|---|---|
| **ERIN EDWARDS**, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 2023CH00051 |
| **JOHNSONVILLE LLC**, | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

NOW COMES Plaintiff ERIN EDWARDS ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through counsel, and, pursuant to 735 ILCS 5/2-801 of the Illinois Code of Civil Procedure, moves this Court for an order certifying this action as a class action, as follows:

### I. INTRODUCTION.

Plaintiff filed a Class Action Complaint ("Complaint") in the Circuit Court of Cook County, Illinois against Defendant JOHNSONVILLE LLC ("Defendant") in connection with Defendant's misrepresentation that its bratwurst food products (the "Brats") contain "100% premium pork," when, in fact, Defendant's Brats are encased in beef collagen. *See generally*, Complaint. Plaintiff incorporates by reference the allegations in her Complaint in support of this motion.

Plaintiff seeks to maintain this action on behalf of herself, and a class ("Class") of similarly situated individuals, defined as follows:

> All persons in the United States who purchased the Brats.

*See* Complaint, ¶ 50.

In the Complaint, Plaintiff, individually, and on behalf of the Class, brings claims for violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, the Consumer Fraud and Deceptive Trade Practices Acts of Various States and District of Columbia, and for unjust enrichment. *See* Complaint, Counts I through III. At this time, Plaintiff seeks to maintain this action as a class action, pursuant to 735 ILCS 5/2-801, and certify the Class defined above.

## II.    LEGAL ARGUMENT.

### A.    Standard for Class Certification.

Class certification is governed by section 2-801 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-801. In order for an action to be maintained as a class action, the movant must demonstrate that: (1) the Class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the Class that predominate over individual questions; (3) the Class Representative will fairly and adequately protect the interests of the Class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. *Id.* As soon as practicable after the commencement of a class action, a Court shall determine by order whether it may be so maintained and describe those whom the court finds to be members of the Class. 735 ILCS 5/2-802(a). The order may be conditional and may be amended before a decision on the merits. *Id.*

The decision to certify a purported Class is within the sound discretion of the trial court. *McCabe v. Burgess*, 75 Ill.2d 457, 464 (1979); *A.G. Farms, Inc. v. American Premier Underwriters, Inc.*, 296 Ill.App.3d 684, 695 (4th Dist. 1998); *see also Schlenz v. Castle*, 84 Ill.2d 196, 203 (1981) (holding that certification by trial court will only be disturbed if there is an abuse

of discretion or impermissible application of legal standard). When deciding whether to certify a Class, the Court may consider "any matters of law or fact properly presented by the record including the pleadings, depositions, affidavits, answers to interrogatories and any evidence that may be adduced at hearings." *Gorden v. Boden*, 224 Ill.App.3d 195, 199 (1st Dist. 1991), quoting *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 137 Ill.App.3d 84, 100 (5th Dist. 1985); *Brown v. Murphy*, 278 Ill.App.3d 981, 989 (1st Dist. 1996).

A class action is an appropriate method of disposing of a number of relatively small claims. *See Miner v. Gillette Co.*, 87 Ill.2d 7, 8-9 (1981) (reasoning that purpose of class action is to allow a representative party to pursue claims of a large number of persons with like claims). Class actions are an essential and well-accepted way for courts to protect consumers. "In a large and impersonal society, class actions are often the last barricade of consumer protection. Generally, individual plaintiffs cannot, will not and ought not be required to pursue what would often be trivial relief." *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 1004 (1st Dist. 1991). A class action is "an inviting procedural device to cope with frauds causing small damages to large groups . . . . The alternatives to the class action—private suits or governmental action—have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective." *Id.* (citing omitted).

**B.    Joinder of All Members of the Purported Class Would Be Impracticable.**

Section 2-801(1) of the Code of Civil Procedure, the so called "numerosity requirement," necessitates that the Class be "so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). Very few Illinois cases specifically address the numerosity requirement, but Illinois courts construing the section may follow federal practice under Rule 23(a)(1) (Fed. R. Civ.

P. 23(a)(1)) for guidance. *In re Application of Rosewell*, 236 Ill.App.3d 165, 173-74 (1st Dist. 1992), relying on Forde, *State Practice: Illinois Class Action Statute*, in Class Actions ch. 7, ⬚ 7.6 (Ill. Inst. for Cont. Legal Educ. (1986)). Purported numbers are not dispositive; rather, the question of numerosity depends upon the particular facts of each case. *Id.*

Federal courts have not established a bright line or a minimum number of members to create a Class. *Wood River Area Development Corp. v. Germania Fed. Savings and Loan Ass'n*, 198 Ill.App.3d 445, 450 (5th Dist. 1990). If, however, a putative Class has more than forty people in it, then numerosity is satisfied. *Id., citing* Miller, *An Overview of Federal Class Actions: Past, Present, and Future*, Federal Judicial Center, at 22 (1977); *see also Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (holding 40 members sufficient for class certification); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (reasoning where Class numbers at least 40, joinder is generally considered impracticable).

The Court has the ability to make common sense assumptions to find support for numerosity. *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D. Ill. 1988); *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination . . . . Where the exact size of the Class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1992), ⬚ 7.22.A.

The fact that Plaintiff cannot state with specificity the exact number of purported members of the Class at this time does not defeat the existence of sufficient numerosity, because it is not

4

necessary that Plaintiff knows the precise number of members of the Class at the outset of the case. Indeed, "Plaintiffs are not required to specify the exact number of Class members so long as a good faith estimate is provided." *McKenzie v. City of Chicago*, 175 F.R.D. 280, 285 (N.D. Ill. 1997), *citing Long v. Thornton Township High School Dist. 205*, 82 F.R.D. 186, 189 (N.D. Ill. 1979). *See Miner*, 87 Ill.2d at 18 (rejecting defendant's arguments on basis that individuals with potential claims are readily identifiable by examination of defendant☐s files); *see also In re Rosewell*, 236 Ill.App.3d at 173-73 (affirming trial court's conclusion that joinder of potential Class members was practical because of inherent ease of identifying affected taxpayers in addition to geographic location and size of claims).

Here, 735 ILCS 5/2-801(1) is satisfied, as the Class is so numerous that joinder of all members is impractical. Plaintiff believes that there are thousands of Class members, if not more. This is based on that fact that Johnsonville is the largest-selling sausage brand in the United States, with more than $1 billion in annual revenue. *See* Complaint, ¶ 51. Therefore, numerosity in this matter is satisfied.

**C.    Questions of Law and Fact Common to the Putative Class Predominate Over Any Questions Affecting Only Individual Members.**

Section 2-801(2) requires Plaintiff to demonstrate that there are questions of law or fact common to the Class that predominate over any questions affecting only individual members. 735 ILCS 5/2-801(2). Illinois has been hospitable to the maintenance of class actions and has been willing to recognize that common questions of law and fact predominate in numerous situations. *Eshaghi*, 214 Ill.App.3d at 1002. As long as there are questions of fact or law common to the Class and these predominate over any other questions affecting only individual members of the Class, then the commonality requirement is satisfied. *Slimack v. Country Life Ins. Co.*, 227

5

Ill.App.3d 287, 292 (5th Dist. 1992), relying on *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 337-38 (1977); *see also Wenthold v. AT&T Technologies, Inc.*, 142 Ill.App.3d 612, 618 (1st Dist. 1986) (affirming circuit court finding of at least five or six common issues of law or fact). Satisfaction of the requirement pertaining to predominating common questions of fact or law requires a showing that successful adjudication of the purported Class Representative's individual claims will establish a right of recovery in other Class members. *Scott v. Ambassador Insurance Co.*, 100 Ill.App.3d 184, 187 (1st Dist. 1981).

Once the basic determination has been made that a predominating common question of fact or law exists, the fact that there may also be individual questions will not defeat the predominating common question. *Miner*, 87 Ill.2d at 19. A multitude of state cases reveals that Illinois does not require class members to have exact and duplicate causes of action to be included as members of a purported class. *Eshaghi*, 214 Ill.App.3d at 1004. In fact, class members may have significant differences in their claims, and commonality can still be found. *Id.* Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members. *Miner*, 87 Ill.2d at 17-18; *Kennedy v. Commercial Carriers, Inc.* 294 Ill.App.3d 34, 39 (1st Dist. 1997). Where situations requiring individual determinations exist, however, the Court has authority to establish subclasses with each subclass being treated as a class under 735 ILCS 5/2-802(b). *Purcell & Wardrobe Chartered v. Hertz Corp.*, 175 Ill.App.3d 1069, 1075 (1st Dist. 1988); *Wenthold*, 142 Ill.App.3d at 619; *Eshaghi*, 214 Ill.App.3d at 1004; *Steinberg*, 69 Ill.2d at 342.

6

In this case, there are questions of law and fact common to the claims of Plaintiff and the members of the Class. Those common questions predominate over any questions that may affect individual members of the Class, in satisfaction of 735 ILCS 5/2-801(2). These questions include, but are not limited to, the following:

a. Whether the Brats are encased in beef collagen casings;

b. Whether Defendant misrepresented to Plaintiff and Class members that the Brats are both filled and encased with pork (and only pork);

c. Whether Defendant omitted and concealed the fact that the Brats are encased in beef collagen casings;

d. The extent and amount of Plaintiff's and Class members' damages;

e. Whether Defendant's conduct violates the Federal FDCA;

f. Whether Defendant's conduct violates the Illinois FDCA;

g. Whether Defendant's conduct constitutes unfair or deceptive business practices under the Illinois Consumer Fraud and Deceptive Trade Practices Act;

h. Whether Defendant violated the Consumer Fraud and Deceptive Trade Practices Acts of the fifty states and the District of Columbia; and

i. Whether Defendant's conduct resulted in Defendant unjustly retaining a benefit to the detriment of Plaintiff and Class members, and violated the fundamental principles of justice, equity, and good conscience.

*See* Complaint, ¶ 52.

Importantly, the questions of law and fact are independent of any individual damage questions for Plaintiff and each member of the Class. Therefore, commonality and predominance are satisfied.

7

**D.    The Proposed Class Representative Will Fairly and Adequately Represent the Interests of the Class.**

Certification requires a showing that the proposed Class Representative will fairly and adequately represent the interests of the Class. 735 ILCS 5/2-801(3). Absentee class members must be so represented that their rights will receive adequate protection. *Steinberg*, 69 Ill.2d at 338. The test applied to determine the adequacy of representation is whether the interests of those who are parties are the same as those who are not joined, and whether the litigating parties fairly represent those not joined. *Newberry Library v. Board of Education*, 387 Ill. 85, 90 (1944); *Miner*, 87 Ill.2d at 14. Additionally, a Class Representative's attorney "must be qualified, experienced and generally able to conduct the proposed litigation." *Steinberg*, 69 Ill.2d at 338-39. Finally, the Class Representative's interest must not appear collusive. *Id.*

Plaintiff's claims are typical of the claims of the Class. All claims in this matter are based on the same legal and factual issues, as they arise out of Defendant's misrepresentations and omissions concerning the Brats. *See* Complaint, ¶ 53.

In addition, Plaintiff will fairly and adequately protect the interests of the Class, as she is committed to the vigorous prosecution of this action and has retained competent, qualified and experienced counsel able to prosecute the action on behalf of the Class. *See* Complaint, ¶ 53; and Plaintiff's counsel's firm bio, attached hereto as <u>Exhibit A</u>.

**E.    A Class Action Is an Appropriate Method for the Fair and Efficient Adjudication of the Instant Action.**

Section 5/2-801(4) requires that the class action be "an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). In making this determination, a Court must consider whether a class action "(1) can best secure the economies of time, effort and

expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill.App.3d at 203; *see also McCabe*, 75 Ill.2d at 468 (holding that federal construction as it relates to economies to be affected through use of class actions should be applied by Illinois courts).

In this case, class adjudication is an appropriate method for the fair and efficient adjudication of the claims of the Class, and satisfies 735 ILCS 5/2-801(4). *See* Complaint, ¶ 54. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation. *Id.* Additionally, if individual members of the Class were to prosecute separate actions, then there would be a risk of inconsistent or varying adjudications with respect to individual members of the Class. *Id.* These inconsistent adjudications would, as a practical matter, be dispositive of the other members not parties to the adjudications or which would substantially impair or impede their ability to protect their interests. *Id.*

A class action certified by the Circuit Court of Cook County will result in the fair and efficient adjudication of the controversy between the parties based on the identity of issues and common questions, as well as avoid the filing of numerous repeated and similar individual and class actions. Therefore, class adjudication would serve the interest of judicial economy, and would avoid the filing of numerous repeated and similar individual and class actions.

## III.    CONCLUSION.

The Court should certify the Class, as there is no better method available for the adjudication of the claims at issue in this case. Allowing this case to proceed on a classwide basis will be an efficient use of judicial resources and will be superior to individual lawsuits, especially

9

considering the fact that Defendant's wrongdoings were identical with respect to Plaintiff and the members of the Class, and in light of the relatively small amount of damages suffered by each member of the Class.

Furthermore, the filing of numerous cases against Defendant would be unduly burdensome to the Courts. Judicial efficiency would be greatly promoted by the adjudication of identical claims through a single proceeding.

Therefore, from the perspective of the Court system and the Class members, a class action is a superior means of resolving the issues regarding Defendant's misconduct, especially when compared to individual actions, due to the relatively small amount of damages suffered by each Class member. Allowing this case to proceed as a class action will be an efficient use of judicial resources and will be superior to individual lawsuits.

WHEREFORE, Plaintiff AMY JOSEPH, individually, and on behalf of all others similarly situated, prays that the Court enter an order certifying the Class and/or Illinois Subclass defined herein, pursuant to 735 ILCS 5/2-801, appointing Plaintiff as the Class Representative, designating Plaintiff's counsel as Class Counsel, and for any other relief the Court deems appropriate.

Plaintiff ERIN EDWARDS, individually, and on behalf of all others similarly situated,

By: s/ Thomas A. Zimmerman, Jr.
Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Sharon A. Harris
*sharon@attorneyzim.com*
Matthew C. De Re
*matt@attorneyzim.com*
Jeffrey D. Blake
*jeff@attorneyzim.com*

10

**Zimmerman Law Offices, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
Firm ID No.: 34418
www.attorneyzim.com

Counsel for Plaintiff and the putative Class

11

## ZIMMERMAN LAW OFFICES, P.C.

Since 1996, Zimmerman Law Offices has represented individuals and businesses in a wide array of legal matters. Its attorneys are established and respected trial lawyers who represent clients in complex litigation and class action lawsuits nationwide. The firm has an extensive and varied litigation-based practice, with a focus on class action litigation. Zimmerman Law Offices has recovered over $300 million on behalf of millions of individuals and businesses nationwide.

The attorneys at Zimmerman Law Offices are experienced in Multidistrict Litigation (MDL), having served as lead counsel in MDL cases throughout the country. These MDL cases included claims for fraud, improper pricing, misleading product claims, and privacy violations including data breaches.

## ATTORNEYS

### Thomas A. Zimmerman, Jr.

A seasoned litigator for over 25 years, Mr. Zimmerman practices extensively and has obtained multi-million dollar jury verdicts in class action, corporate, commercial, medical malpractice, consumer fraud, constitutional due process, general civil, product liability, toxic tort, and other complex litigation. He represents both plaintiffs and defendants nationwide in state and federal trial and appellate courts. He also represents individuals and corporations in transactional matters, and before state and federal administrative and regulatory agencies.

Mr. Zimmerman has been lead counsel in national and state-wide class action litigation, and has handled other multi-party litigation involving such companies as MCI/Worldcom, United Airlines, Peoples Gas, AT&T, Warner-Lambert, Pfizer, Liberty Mutual Insurance Co., DaimlerChrysler, ADT, Ford Motor Co., Mead Johnson, KCBX, Inland Bank, Commonwealth Edison, Ameritech, Wells Fargo, and Bridgestone/Firestone. He is well respected for his representation of physicians, dentists, nurses, psychologists, veterinarians, and many other licensed professionals before state and federal agencies including the Illinois Department of Financial and Professional Regulation, and the U.S. Department of Health and Human Services.

In 2017, 2018, 2019, 2020, 2021, 2022, and 2023, he was selected as a *Super Lawyer* in the area of class action and mass torts.

In 2000, he was voted one of the Top 40 Illinois Attorneys Under the Age of 40. This is especially notable, as he was chosen out of 60,000 attorneys in Illinois under the age of forty.

In 2003, the Illinois Supreme Court appointed Mr. Zimmerman to the Review Board of the Attorney Registration and Disciplinary Commission ("ARDC"). He served in that capacity until 2011, wherein he presided over appeals by attorneys who have been found to have committed misconduct, and recommended discipline for their ethical violations. In 2013, the ARDC appointed

**EXHIBIT A**

Mr. Zimmerman as Special Counsel, wherein he conducts independent investigations in matters involving allegations of misconduct against attorneys associated with the ARDC.

Additionally, the Illinois Governor appointed Mr. Zimmerman to the Illinois Courts Commission in 2003. A Commission member presides over proceedings wherein judges are charged with committing ethical violations, and imposes discipline on judges who are found to have engaged in misconduct. Mr. Zimmerman has served as a Commission member continuously since his appointment.

Prior to becoming an attorney, Mr. Zimmerman worked for AT&T where he negotiated partnerships with companies for domestic and international joint-venture and new product development activities. During this time, he was the featured speaker at 400 conferences, seminars, and presentations. Thereafter, he presented oral testimony at various Federal Senate and Congressional hearings. After obtaining his law license, Mr. Zimmerman has lectured at law schools and seminars, and is frequently interviewed by the news media concerning legal issues.

Mr. Zimmerman earned a B.S. in Computer Science-Mathematics from the University of Illinois, and an M.B.A. in Finance from DePaul University in the evenings while working for AT&T. After leaving AT&T, Mr. Zimmerman earned his law degree from the Chicago-Kent College of Law, where he was a Ramsey-Burke Scholarship recipient and earned the Academic Achievement Award.

He is admitted to practice law in Illinois, and other states on a case-by-case basis, and he is admitted to practice before the U.S. Supreme Court, and various federal courts of appeal and federal district courts. Based on his demonstrated experience and ability, he was appointed to the federal court trial bar.

Mr. Zimmerman is currently the chair of the Clerk of the Circuit Court of Cook County Attorney Advisory Committee, and was formerly co-chair of the Clerk of the Circuit Court Transition and Strategic Planning Public Policy Subcommittee.

Mr. Zimmerman is a member of the American, Illinois State, and Chicago Bar Associations, and the Illinois Trial Lawyers Association, where he serves on various committees. He is also a member of the American Association for Justice. In 2000, he was appointed to the Illinois Trial Lawyers Association Board of Advocates.

Involved in numerous community service activities, Mr. Zimmerman has been an Illinois State Board of Education surrogate parent of disabled children since 1988. In addition, he was a speaker on the rights of disabled people for the Illinois Planning Council on Developmental Disabilities, and a Family Shelter Service counselor to battered children for many years. He has been recognized by the federal court for his pro bono representation of indigent clients.

## Sharon A. Harris

Ms. Harris has extensive experience litigating complex class action matters in state and federal trial and appellate courts nationwide. She has focused her practice on consumer protection, product liability, privacy, and antitrust matters. Ms. Harris has developed a particular expertise in state unfair and deceptive practice statutes, data breach laws, privacy laws, federal antitrust laws, the Fair Credit Reporting Act, the Racketeer Influenced and Corrupt Organizations Act (RICO), the Telephone Consumer Protection Act, and various other federal and state laws. She has been appointed class counsel in numerous cases. For example, she was appointed one of class counsel in *In re Pilot Flying J Fuel Rebate Contract Litigation*, which involved allegations that the defendants violated RICO and various state laws by withholding portions of fuel discounts and rebates to which class members were contractually entitled. A settlement was granted final approval. Ms. Harris was also appointed class counsel in a class action lawsuit, *Norton, et al. v. Niantic, Inc.*, No. 2017 CH 10281 (Cir. Ct. Cook Cty., Ill.), and helped negotiate a $1.75 million settlement on behalf of attendees at the 2017 Pokémon GO Fest in Chicago that were unable to play the game during the fest due to technical and other issues. Additionally, Ms. Harris was appointed class counsel in a class action lawsuit, *Miller, et al. v. Inteleos, Inc.*, No. 1:17-cv-00763-DAP (N.D. Ohio), on behalf of individuals who took a Registered Vascular Technology (RVT) examination and passed the examination but received an incorrect failing score. The settlement she helped negotiate was granted final approval by the Court.

She received her Bachelor of Science degree from Michigan State University with a dual major in Political Science and Social Science. Ms. Harris received her law degree from DePaul University College of Law. She is a member of the American, Illinois State, and Chicago Bar Associations. She is admitted to practice in the State of Illinois, the United States District Court for the Northern District of Illinois, the United States District Court for the Northern District of Indiana, and the United States Courts of Appeals for the Seventh and Ninth Circuits.

## Matthew C. De Re

Mr. De Re advocates for both plaintiffs and defendants nationwide in state and federal trial and appellate courts. His practice areas include class action, corporate, commercial, consumer fraud, general civil, product liability, personal injury, and other complex litigation. He also represents professionals, such as physicians, dentists, nurses, insurance producers, and real estate brokers, before state and federal agencies, including the Illinois Department of Financial and Professional Regulation and the Department of Insurance. In addition to his extensive litigation practice, Mr. De Re assists individuals and corporations in transactional matters.

He has experience in all phases of litigation, including extensive discovery and substantive motion practice. He has assisted in the defense of individuals and companies in cases involving personal injury, employment, and civil rights. Mr. De Re has also vigorously pursued recovery for plaintiffs in numerous civil matters. Prior to joining Zimmerman Law Offices, he served as a Law Clerk for the Circuit Court of Cook County.

Mr. De Re graduated from the University of Wisconsin-Madison with a B.S. in both Political Science and History. He earned his law degree from Washington University in St. Louis. While in

law school, he received academic awards and appeared on the Dean's List multiple times. He also served two years on the Executive Board of the Student Bar Association and was the Associate Managing Editor for the Washington University Journal of Law & Policy.

He is admitted to practice law in the State of Illinois and is a member of the Illinois State and Chicago Bar Associations.

### Jeffrey D. Blake

Mr. Blake represents consumers in class actions involving unfair and deceptive trade practices, privacy violations, antitrust matters, and defective products. He has considerable experience prosecuting complex cases in state and federal courts throughout the nation, including appeals.

Mr. Blake received his J.D., *cum laude*, from the Chicago-Kent College of Law in 2012. While attending, Mr. Blake served as Executive Articles Editor for the *Chicago-Kent Law Review*, spent a semester as a judicial extern for the Honorable Samuel Der-Yeghiayan of the United States District Court for the Northern District of Illinois, and participated in the Intellectual Property Law Clinic and the Center for Open Government.

After graduating law school, Mr. Blake served as the judicial law clerk for the Honorable Patrick McKay, Superior Court Judge for the Third Judicial District in Anchorage, Alaska.

Mr. Blake received a Bachelor of Science from the University of Illinois at Chicago.

He is admitted to practice in the State of Illinois and the United States District Court for the Northern District of Illinois.

### Jordan M. Rudnick (*of counsel*)

Mr. Rudnick represents individuals and large national and international companies in providing business advice, counsel and dispute resolution in a wide variety of contexts for almost 20 years. In particular, Mr. Rudnick represents plaintiffs and defendants nationwide in class action, corporate, commercial, consumer fraud, general civil, and other complex litigation in state and federal courts, arbitrations, and mediations. Mr. Rudnick has been involved in all phases of litigation, including extensive discovery, substantive motion practice, trials and appeals.

His experience as an attorney also includes representing parties in nationwide securities fraud class actions. Notably, Mr. Rudnick represented Canadian Imperial Bank of Commerce in the Enron class action securities litigation and related proceedings. He also has extensive experience representing commercial policyholders in recovering insurance proceeds from their insurers.

Mr. Rudnick serves as an arbitrator for FINRA (Financial Industry Regulatory Authority, formerly known as the NASD or National Association of Securities Dealers) where he and panels of two other arbitrators decide the outcome of disputes between investors and securities brokers and dealers.

4

He has provided extensive pro bono representation of improperly-expelled school children in conjunction with the Legal Assistance Foundation of Metropolitan Chicago, and with the Chicago Coalition for the Homeless. In addition, in his spare time, he is a volunteer at the Lincoln Park Community Homeless Shelter.

Mr. Rudnick served as a judicial law clerk to the Honorable Justice Joseph Gordon, Illinois Appellate Court, 1st District, where he drafted opinions in appeals arising from complex civil and criminal trial court decisions.

Mr. Rudnick earned his B.A. in Political Science from the University of Chicago, and he graduated *cum laude* from the John Marshall Law School with honors and on a full scholarship. In law school, he appeared on the Dean's List, and he was a member of the school's Moot Court Team. He also was a Staff Editor on the *John Marshall Law Review* for two years.

He is admitted to practice law in Illinois, New York, and Washington, D.C., and is a member of the Chicago Bar Association, NAACP, and ACLU.

## **REPRESENTATIVE CLASS ACTION CASES**

### **Completed Cases**

*Misleading Product Claims* — $62 million recovery for a nationwide class of customers who purchased products that were advertised to reduce cellulite in the human body, plus equitable relief to correct the misleading claims. *Joseph v. Beiersdorf North America, Inc.*, No. 11 CH 20147 (Cook Cnty, IL).

*Improper Cellular Phone Fee* — $48 million recovery for a statewide class of businesses and individuals who paid an improper municipal infrastructure maintenance fee on their cellular phone bills. *PrimeCo Personal Communications, et al. v. Illinois Commerce Commission, et al.*, 98 CH 5500 (Cook Cnty, IL).

*Defective Vehicles* — $35 million in monetary and injunctive relief for a nationwide class of individuals and businesses who purchased vehicles manufactured with a defective transmission. *Vargas, et al. v. Ford Motor Co.*, No. 12 cv 8388 (C.D. CA).

*Fraud* — $31 million recovery for a nationwide class of businesses and individuals who placed advertisements in a newspaper based on fraudulent circulation figures. *In re Chicago Sun-Times Circulation Litigation*, No. 04 CH 9757 (Cook Cnty, IL).

*Defective Products* — $16 million recovery for a nationwide class of individuals who purchased defective home security systems that could be easily hacked and disabled. *Edenborough v. ADT, LLC, et al.*, No. 16 cv 2233 (N.D. CA).

*Misleading Product Claims* — $14 million recovery for a nationwide class of customers who purchased defective garden hoses with misleading claims, plus equitable relief to extend the product's warranty. *Bergman, et al. v. DAP Products, Inc., et al.*, No. 14 cv 3205 (D. MD).

*Fraud / Data Breach* — $11.2 million recovery for a nationwide class of individuals who had their personal and financial data stolen due to insufficient protection of that information by an internet service provider, and who also paid money to that provider based on misrepresentations. *In re Ashley Madison Customer Data Security Breach Litigation*, MDL No. 2669 (E.D. MO).

*Defective Products* — $9 million recovery for a nationwide class of individuals who sustained financial and personal injuries resulting from their purchase and use of baby wipes that were tainted with a dangerous bacteria. *Jones v. First Quality Enterprises, Inc., et al.*, No. 14 cv 6305 (E.D. NY).

*Power Outages* — $7.75 million recovery for a statewide class of businesses and individuals who sustained financial damages due to widespread and prolonged power outages. *In re Commonwealth Edison 1999 Summer Power Outages*, No. 99 CH 11626 (Cook Cnty, IL).

*Privacy Violation* — $7.3 million recovery for a nationwide class of consumers whose personal information was improperly disclosed. *Aliano v. Airgas USA, LLC*, No. 14 CH 20024 (Cook Cnty, IL).

*Improper Court Fee* — $5.2 million recovery for a nationwide class of individuals and businesses who were charged an improper fee by the Clerk of the Court. *Midwest Medical Records Assoc., et al. v. Dorothy Brown, et al.*, No. 15 CH 16986 (Cook Cnty, IL).

*Data Breach* — $4.95 million recovery for a nationwide class of individuals who had their personal and financial data exposed due to insufficient protection of that information by state governments. *Culbertson, et al. v. Deloitte Consulting LLP*, No. 20 cv 3962 (S.D. NY).

*Data Breach* — $4.3 million recovery for a nationwide class of individuals who had their personal, financial, and medical data stolen due to insufficient protection of that information by a company that rents caps and gowns for graduation ceremonies. *In re Herff Jones Data Breach Litigation*, No. 21 cv 1329 (S.D. IN).

*Data Breach* — $4.3 million recovery for a nationwide class of individuals who had their personal and financial data stolen due to insufficient protection of that information by a retailer. *In re Sonic Corp. Customer Data Breach Litigation*, MDL No. 2807 (N.D. OH).

*Unsolicited Faxes* — $4 million recovery for a nationwide class of businesses and individuals who sustained damages resulting from the receipt of unsolicited facsimile advertisements. *Derose Corp. v. Goyke Health Center*, 06 CH 6681 (Cook Cnty, IL).

*Fraud* — $3.5 million recovery for a nationwide class of Spanish speaking purchasers of baby formula, arising out of misleading product labeling. *Cardenas v. Mead Johnson & Company*, No. 01 CH 11151 (Cook Cnty, IL).

*Unsolicited Faxes* — $2.5 million recovery for a statewide class of individuals and businesses who sustained damages resulting from the receipt of unsolicited facsimile advertisements. *iMove Chicago, Inc. v. Inland Bancorp, Inc., et al.*, No. 16-cv-10106 (N.D. IL)

*Misleading Product Labeling* — $2.5 million recovery for a nationwide class of businesses and individuals who purchased whiskey whose labeling misstated the characteristics of the product. *Due Fratelli, Inc. v. Templeton Rye Spirits, LLC*, No. 2014 CH 15667 (Cook Cnty, IL).

*Misrepresentations in Book* — $2.35 million recovery for a nationwide class of customers who purchased a fictional book while under the impression that the book was a non-fiction memoir. *In re A Million Little Pieces Litigation*, No. 06-md-1771 (S.D. NY).

*Misleading Product Claims* — $1.9 recovery for a nationwide class of individuals and businesses who purchased HDMI cables based on representations that more expensive higher speed cables were needed to operate certain audio visual equipment. *O'Brien, et al. v. Monster, Inc., et al.*, No. 2015 CH 13991 (Cook Cnty, IL).

*Shareholder Derivative Suit* — $1.875 recovery, and corporate governance reforms, for a nationwide class of shareholders against a company and its officers and directors due to breaches of fiduciary duties and excess compensation to the officers and directors due to overstated financial results. *Dorvit, et al. v. Winemaster, et al.*, No. 17 cv 1097 (N.D. IL).

*Consumer Fraud* — $1.6 million recovery for a nationwide class of individuals who paid for and traveled to an event that did not occur as advertised. *Norton v. Niantic, Inc.*, No. 2017 CH 10281 (Cook Cnty, IL).

*Misleading Product Labeling* — $1.5 million recovery for a nationwide class of individuals who purchased a product whose packaging misstated the characteristics of the product. *In re Honest Company Sodium Lauryl Sulfate (SLS) Marketing and Sales Practices Litigation*, MDL No. 2719 (C.D. CA).

*Improper Debiting of Bank Accounts* — $1.5 million recovery for a statewide class of individuals who were members of a health club that debited its members' bank accounts without adequate notice or authority. *Wendorf, et al. v. Landers, et al.*, No. 10 cv 1658 (N.D. IL).

*Environmental Contamination* — $1.4 million recovery for a statewide class of individuals and businesses who suffered from an infiltration of coal and petroleum coke dust in the air and on their property. *Martin, et al. v. KCBX Terminals Company, et al.*, No. 13 cv 08376 (N.D. IL).

*School Misrepresenting Accreditation* — $1.2 million recovery, representing nearly the full value of each class member's loss, for a statewide class of individuals who enrolled in a school based on the school's misrepresentations that it was accredited. *Allen v. Illinois School of Health Careers, Inc.*, No. 10 CH 25098 (Cook Cnty, IL).

*Privacy Violation* — $1 million recovery for a nationwide class of consumers whose personal information was improperly disclosed. *Radaviciute v. Christian Audigier, Inc.*, No. 10 cv 8090 (N.D. IL).

*Data Breach* — $900,000 recovery for a nationwide class of individuals who had their personal and financial information stolen due to insufficient protection of that information by a mortgage servicer. *Schmitt v. SN Servicing Corp.*, No. 21 cv 3355 (N.D. CA).

*Breach of Contract* — $570,000 recovery for a nationwide class of sonographers who took and passed a certification examination but the testing agency improperly scored their results and falsely reported that they failed the examination. *Miller, et al. v. Inteleos, Inc.*, No. 17 cv 763 (N.D. OH).

*Privacy Violation* — $500,000 recovery for a statewide class of consumers whose personal information was improperly disclosed. *Aliano v. Joe Caputo and Sons – Algonquin, Inc.*, et al., No. 09 cv 0910 (N.D. IL).

*Contaminated Drinking Water* — $500,000 recovery for a statewide class of individuals who suffered damages as a result of a contaminated water well, plus equitable relief to close the well. *Joseph Marzano v. Village of Crestwood*, No. 09 CH 16096 (Cook Cnty, IL).

*Fraud* — $450,000 recovery for a nationwide class of individuals who were charged and paid for a greater quantity of a product than they received. *Bruun v. Red Robin Gourmet Burgers, Inc., et al.*, No. A-20-814178-C (Clark Cnty, NV).

*Fraud* — $425,000 recovery for a nationwide class of businesses and individuals who purchased spirits whose labeling misstated the characteristics of the product. *Due Fratelli, Inc. v. Proximo Spirits, Inc.*, No. 2014 CH 17429 (Cook Cnty, IL).

*Foreclosure Fraud* — $425,000 recovery for a nationwide class of borrowers whose lender failed to properly respond to qualified written requests, requests for information, and/or notices of error because of an improper active litigation, active mediation, or active bankruptcy exception. *Lieber v. Wells Fargo Bank, N.A.*, No. 16 cv 2868 (N.D. OH).

*Privacy Violation* — $295,000 recovery for a nationwide class of consumers whose personal information was improperly disclosed. *Joseph v. Marbles, LLC*, No. 13 cv 4798 (N.D. IL).

*Data Breach* — $285,000 recovery for a nationwide class of individuals who had their personal and financial data stolen due to insufficient protection of that information by a restaurant chain. *Ramsey v. 41 E. Chestnut Crab Partners, LLC, et al.*, No. 19 CH 2759 (Cook Cnty., IL).

*Privacy Violation* — $250,000 recovery for a nationwide class of consumers whose personal information was improperly disclosed. *DiParvine v. A.P.S., Inc. d/b/a Car Quest Auto Parts*, No. 11 cv 6116 (N.D. IL).

*Unsolicited Faxes* — $237,600 recovery for a statewide class of individuals and businesses who sustained damages resulting from the receipt of unsolicited facsimile advertisements. *Phillips Randolph Enterprises, LLC v. Key Art Publishing Co.,* No. 07 CH 14018 (Cook Cnty, IL).

*Constitutional Violation* — $175,000 recovery for a nationwide class of individuals who were wrongfully issued automated construction zone speed enforcement tickets on a highway that was not under construction. *Black, et al. v. City of Girard, Ohio, et al.,* No. 18 cv 1256 (Trumbull Cnty, OH).

*Improper Health Club Memberships* — Recovery for a statewide class of individuals whose health club membership agreements provided for improper membership terms. *Izak-Damiecki v. World Gym International, LLC,* No. 10 CH 18845 (Cook Cnty, IL).

*Illegal Lending Practices* — Recovery, representing the maximum amount of statutory damages, for a nationwide class of customers who obtained loans whose terms violated the Truth in Lending Act, plus equitable relief to modify the loan contract to conform with the law. *Papeck, et al. v. T.N. Donnelly & Co.,* No. 09 CH 31997 (Cook Cnty, IL).

*Privacy Violation* — Recovery for a nationwide class of over 36 million consumers whose personal information was improperly disclosed. *Dudzienski v. GMRI, Inc.,* No. 07 cv 3911 (N.D. IL).

*Unsolicited Faxes* — Recovery for a statewide class of individuals and businesses who sustained damages resulting from the receipt of unsolicited facsimile advertisements. *Phillips Randolph Enterprises, LLC v. Home Run Inn, Inc.,* No. 08 CH 43273 (Cook Cnty, IL).

*Privacy Violation* — Recovery for a statewide class of over 60,000 consumers whose personal information was improperly disclosed. *O'Brien v. Paninos, Inc.,* No. 10 cv 2991 (N.D. IL).

*Breach of Warranty* — Recovery on behalf of a nationwide class of customers who had their warranty retroactively changed from a lifetime guarantee to a 90-day guarantee, plus equitable relief to reinstate the lifetime guarantee on the products. *Brady, et al. v. Learning Curve Int'l, Inc., et al.,* No. 06 CH 03056 (Cook Cnty, IL).

*Privacy Violation* — Recovery for a nationwide class of tens of thousands of consumers whose personal information was improperly disclosed. *In re Kathy Aliano v. Hancock Fabrics, Inc.,* No. 07-10353 (Del. BK).

*Improper Debt Collection* — Recovery on behalf of a nationwide class of individuals against whom attempts were made to collect a time-barred debt, in violation of the Fair Debt Collection Practices Act. *Ocasio v. First Financial Investment Fund V, LLC, et al.,* No. 15 cv 10167 (N.D. IL).

**Pending Cases — Preliminary Approval of Settlement Granted**

*Antitrust* — $20 million recovery for a nationwide class of individuals who purchased packaged seafood products from companies that conspired to fix prices in violation of the Sherman Act. *In re. Packaged Seafood Products Antitrust Litigation*, MDL No. 2670 (S.D. CA).

**Pending Cases — Appointed Class Counsel**

*Improper Fee* — Class action for a statewide class of individuals who were charged an improper fee by the state in connection with the issuance of a driver's license. *Madyda, et al. v. Ohio Dept. of Public Safety*, No. 19-426 (OH Ct. of Claims).

*Invasion of Privacy* — Class action for a nationwide class of individuals who were surreptitiously viewed and recorded using the toilets in holding cells. *Alicea, et al. v. County of Cook*, No. 18 cv 5381 (N.D. IL).

*Environmental Contamination* — Class action for a statewide class of individuals whose residential drinking water was contaminated with lead. *Henderson, et al. v. Aqua Illinois, Inc.*, No. 2019 CH 10191 (Will Cnty, IL).

*Constitutional Violation* — Class action for a statewide class of individuals who paid an unconstitutional firearms and ammunition tax. *Boch, et al. v. Cook County, Illinois, et al.*, No. 21 CH 5485 (Cook Cnty, IL).

**Pending Cases — Appointed to Executive Committee**

*Misleading Product Claims* — Class action for a nationwide class of individuals who purchased defective cheese products based on misleading representations. *In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litigation*, MDL No. 2707 (N.D. IL).

**Pending Cases**

*Fraud* — Class action for a statewide class of individuals who were wrongfully issued automated red light tickets by red light cameras that were installed in violation of state law.

*Unpaid Overtime* — Class action for a nationwide class of individuals who were not paid all wages and premium overtime for hours worked in excess of forty hours per week.

*Constitutional Violation* — Class action for a statewide class of individuals who were improperly denied pandemic unemployment assistance benefits because the governor of their state refused to accept those federal benefits and distribute the money to the individuals.

*Improper Debt Collection* — Class action for a nationwide class of individuals who were sent misleading debt collection letters, in violation of the Fair Debt Collection Practices Act.

*Data Breach* — Class action for a statewide class of individuals who had their personal, financial, and medical data stolen due to insufficient protection of that information by a hospital.

*Violation of RESPA Act* — Class action for a nationwide class of borrowers who were denied the requisite loan modification options, as required by the Real Estate Settlement Procedures Act.

*Constitutional Violation* — Class action for a nationwide class of individuals who were wrongfully issued automated traffic speed enforcement tickets by a municipality that was denied authorization to issue the tickets.

*Invasion of Privacy* — Class action for a nationwide class of individuals who received unauthorized telemarketing calls to their phones.

*Consumer Fraud* — Class action for a nationwide class of individuals who were defrauded when their printers were disabled from using third party toner under the guise of a firmware update.

*Breach of Contract* — Class action for a statewide class of individuals who are members of athletic clubs that unilaterally terminated their rewards program without notice.

*Antitrust* — Class action for a nationwide class of individuals who purchased packaged seafood products from companies that conspired to fix prices in violation of the Sherman Act.

*Environmental Contamination* — Class action for a statewide class of individuals whose residential drinking water was contaminated with lead.

*Constitutional Violation* — Class action for a statewide class of individuals whose homes were wrongfully taken by the government without adequate compensation.

*Fraud* — Class action for a nationwide class of individuals who were deliberately targeted through marketing and sales of electronic cigarettes when they were minors.

*Defective Product* — Class action for a nationwide class of individuals who purchased a defective product that was contaminated with *Salmonella*.

*Consumer Fraud* — Class action for a statewide class of individuals who were denied loans due to improper banking practices.

*Breach of Contract* — Class action for a nationwide class of individuals who paid for continuous printer toner and ink, but the company failed to deliver it as promised.

*Consumer Fraud* — Class action for a nationwide class of individuals who paid inflated prices for a product.

*Bankruptcy Violation* — Class action for a nationwide class of individuals against a company that took their money in violation of the bankruptcy automatic stay.

*Fraud* — Class action for a statewide class of individuals who were charged and paid an excessive fee to obtain documents from their condominium associations.

*Defective Product* — Class action for a nationwide class of individuals who purchased a defective product that caused liver failure.

*Data Breach* — Class action for a nationwide class of individuals who had their personal, financial, and medical data stolen due to insufficient protection of that information by their employer.

**NOTE:** This list of cases is a representative sample of some of the class action lawsuits. It is not an exhaustive list.