**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIN EDWARDS, individually, and on behalf all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 23 C 1107 |
| JOHNSONVILLE LLC, | ) ) | Judge Charles P. Kocoras |
| Defendant. | ) ) | |

## ORDER

Defendant Johnsonville LLC's motion to dismiss [19] is granted and the complaint is dismissed with prejudice. Civil case terminated. See Statement for details.

## STATEMENT

Plaintiff Erin Edwards alleges that Johnsonville LLC's ("Johnsonville") label stating its bratwurst food products ("Brats") contain "100% PREMIUM PORK", when they are encased in beef collagen, is a misrepresentation that constitutes consumer fraud. Her complaint asserts three claims: (1) violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*. (Count I); (2) violation of "the Consumer Fraud and Deceptive Trade Practices Acts of the Various States and District of Columbia" (Count II); and (3) unjust enrichment under Illinois common law (Count III). Edwards initiated this putative class action against Johnsonville on January 3, 2023, in the Circuit Court of Cook County, Illinois and

Johnsonville removed the case to this Court on February 22, 2023. Dkt. # 7. Johnsonville moves to dismiss Edwards's complaint in its entirety, with prejudice, pursuant to Rule 12(b)(6). Dkt. # 19.

The following facts come from the complaint and are assumed true for the purpose of this motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Edwards's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Many sausages use "natural" casings made from the intestines of the animal from which the sausage meat was derived. Sausages can also use "collagen" casings made from collagen derived from animal hides. Consumers today expect that sausages are encased in the intestines or collagen of the animal from which the meat was derived.

Federal regulations promulgated by the United States Department of Agriculture ("USDA") require sausage manufacturers to clearly "identify the type of meat or poultry from which the casings were derived, if the casings are from a different type of meat or poultry than the encased meat or poultry." 9 C.F.R. § 317.8(b)(37). Furthermore, "the labels of sausages encased in regenerated collagen casings shall disclose this fact on the product label." *Id*. § 317.8(b)(38).

Johnsonville is the largest-selling sausage brand in the United States. It sells the Brats nationwide, including in Cook County and throughout Illinois, and manufactures the Brats at its factory in Illinois. Johnsonville is responsible for the ingredients contained in each package of the Brats and for the textual/graphic content on the

packaging. The front of each package of the Brats displays the words "MADE WITH 100% PREMIUM PORK". Despite this representation, the Brats are encased using beef collagen. The "beef collagen casing" is disclosed in the ingredient list on the back label. Dkt. # 20, at 6.[1]

Approval from the Food Safety and Inspection Service ("FSIS"), the USDA agency that oversees meat product labeling, can take the form of either "sketch approval" or "generic approval." *See* 9 C.F.R. §§ 412.1–412.2. To receive sketch approval, a sketch of a product's proposed label is submitted to FSIS and may be used if deemed compliant with applicable law. *See id*. Under the generic approval process, when changes are made to a previously approved meat label that do not include "special claims" (as defined in the FSIS regulations[2]), the label revisions are "authorized by regulation" and approved by FSIS without the need to resubmit a new sketch. *Id*.

In 2013, FSIS reviewed and granted sketch approval of a prior version of the Brats' label, no longer in use, which included the statement "ONLY PREMIUM CUTS

---

[1] The Court may consider the back of the label, attached to the motion to dismiss, because the Brats' label is referred to in the complaint and is central to Edwards's claims of mislabeling. *See Mueller v. Apple Leisure Corp*., 880 F.3d 890, 895 (7th Cir. 2018).

[2] The following are considered special statements and claims: (i) Those not defined in the Federal meat and poultry products inspection regulations or the Food Standards and Labeling Policy Book; (ii) "Natural" claims, regardless of whether they are defined in the Food Standards and Labeling Policy Book; and (iii) Health claims (including graphic representations of hearts), ingredient and processing method claims (e.g., high-pressure processing), structure-function claims, claims regarding the raising of animals (e.g., "no antibiotics administered"), products labeled as organic (except for those where only individual ingredients are labeled as organic), and instructional or disclaimer statements concerning pathogens (e.g., "for cooking only" or "not tested for E. coli O157:H7"). 9 C.F.R. § 412.2(e)(1).

OF PORK". Dkt. # 20-3, at 7. The ingredient list on the back of that label listed "collagen casing". *Id*. at 8. The current version of the Brats' label was approved through FSIS's generic label approval process and was not re-submitted for sketch review. Dkt. # 24, at 2. FSIS also reviewed and granted sketch approval for the label of Johnsonville's Beddar with Double Cheddar Smoked Sausage ("Cheddar Brats") in 2022, which contained the language "Made with 100% Premium Pork" on the front and listed "beef collagen casing" in the ingredients list on the back. Dkt. # 20-4.[3]

On November 27, 2022, Edwards purchased one package of the Brats for $5.19. Dkt. # 7-1, ¶ 40. Before purchasing them, Edwards saw, read, and understood the information on the front label, including the representation that the Brats contained "100% PREMIUM PORK". Relying on that statement, Edwards believed the Brats were encased in pork-derived casings. She would not have been willing to buy the Brats had she known they were encased in beef collagen, and she was not willing to eat them

---

[3] Johnsonville attaches three exhibits to its motion regarding the label approval process: (1) the Brats' 2013 sketch label approval; (2) the later generic label approval; and (3) the sketch approval of the Cheddar Brats. Dkt. # 20. Edwards does not oppose their consideration and we find that these documents are properly considered. The Brats' label is referred to in the complaint, and Johnsonville's compliance with the FSIS labeling process is central to Edwards's claims. *See supra* note 1. Furthermore, they are regulatory documents, and the Court may take judicial notice of the fact that Johnsonville received these approvals because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 202(b); *see Heisner v. Genzyme Corp.*, 2008 WL 2940811, at *1 (N.D. Ill. 2008). Even if the documents themselves could not be considered, the "regulations relating to the FMIA [] are clear that Defendants' labels were required to be submitted to the FSIS for approval prior to their use, and given that the labels were, in fact used, the Court will presume that the labels received FSIS's approval." *See Kuenzig v. Kraft Foods, Inc.*, 2011 WL 4031141, at *7 n.8 (M.D. Fla. 2011); *see* 9 C.F.R. § 412.1(a) ("No final label may be used on any product unless the label has been submitted for approval to the FSIS . . . and approved . . . .").

once learning of that fact.  The Brats were thus worthless to her.

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case."  *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012).  The Court accepts as true well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible if the complaint contains sufficient alleged facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

When claiming fraud, a party "must state with particularity the circumstances constituting fraud [].  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  The requirement that fraud be

5

pleaded with particularity "ensures that plaintiffs do their homework before filing suit and protects defendants from baseless suits that tarnish reputations." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 439 (7th Cir. 2011). The heightened pleading standard applies to all allegations of fraud (such as misrepresentation), not merely claims labeled fraud. *Id*. at 447.

The Federal Meat Inspection Act ("FMIA"), 21 U.S.C. §§ 601–695, "regulates a broad range of activities" related to meat processing, *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 455 (2012), including "assuring that meat and meat food products . . . are . . . properly marked, labeled, and packaged," 21 U.S.C. § 602. Consistent with this purpose, the FMIA prohibits false or misleading labeling. *Id*. § 607(d); *see also id*. § 601(a). And the FMIA charges FSIS "with ensuring . . . that certain commercial meat products are not misbranded." *Thornton v. Tyson Foods, Inc.*, 28 F.4th 1016, 1021 (10th Cir. 2022); *see also* § 601(n)(1) ("misbranded" means "labeling [that] is false or misleading in any particular"). Congress included an express preemption clause in the FMIA: "labeling . . . requirements in addition to, or different than, those made under this chapter may not be imposed by any State." 21 U.S.C. § 678. "The FMIA's preemption clause sweeps widely . . . [and] prevents a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the Act[.]" *Nat'l Meat Ass'n*, 565 U.S. at 459.[4]

---

[4] Some cases discussed herein apply the preemption provision of the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. §§ 451–473, which is substantively identical to Section 678. *See Thornton*, 28 F.4th at 1023 n.5.

Johnsonville argues Edwards's claims that the statement "100% PREMIUM PORK" on the front of the Brats' label is misleading are preempted by federal law. This is because she challenges a FSIS-approved label and "seeks to impose a labeling requirement that is in addition to or different than FSIS's requirements." Dkt. # 20, at 8. According to Johnsonville, the FSIS rules explicitly allow this type of language: "When, as here, a sausage product is encased in a casing made from a 'different type of meat . . . than the encased meat,' then 'the identity of the casing . . . may be placed . . . in the ingredient statement.'" *Id.* at 9 (citing 9 C.F.R. § 317.8(b)(37)). And FSIS approval means that state law claims like Edwards's are expressly preempted because FSIS already determined that the label is not deceptive or misleading. *Id.* at 10–11 (collecting cases).

Edwards responds that Johnsonville misconstrues her claims; rather than arguing Johnsonville improperly excluded information from the Brats' label that should be added, Edwards contends Johnsonville's "voluntary inclusion of an extra claim that is neither required nor protected by law . . . renders the label deceptive, such that [the "100% PREMIUM PORK" statement] should be removed." Dkt. # 23, at 1. She relies on *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020), stating "the *Bell* court distinguished between labeling claims that are explicitly required by federal law, and those that are voluntarily added by sellers beyond what is required" and "where a label voluntarily includes an additional claim that is neither required nor protected by federal law, federal law does not 'preempt state law from requiring the seller to remove

the voluntarily-added lie.'"  Dkt. # 23, at 2–3 (quoting *Bell*, 982 F.3d at 484–85).

But *Bell* is inapplicable here.  First, whereas the FMIA applies to the Brats' label, *Bell* applied the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(a)(1), and found it did not preempt labeling claims that the Food and Drug Administration ("FDA") permits but does not regulate.  982 F.3d at 484–85.  As Johnsonville points out, "[c]ourts have consistently recognized that FSIS's label approval process under the FMIA and PPIA is materially different from FDA's label approval process under the FDCA.  Most notably, FSIS must approve all labels before they are used, whereas FDA does not pre-approve labels."  Dkt. # 24, at 9; *see*, *e.g.*, *Meaunrit v. ConAgra Foods, Inc.*, 2010 WL 2867393, at *7 (N.D. Cal. 2010) ("This case is distinguishable [from a case applying the FDCA] because there was no federal pre-approval of product labeling and thus no inherent issue of imposing different or additional requirements.").

Unlike in *Bell*, the Brats' label went through FSIS's pre-approval process. Courts have consistently found that where a label was pre-approved by FSIS, state law claims are preempted by federal law.  *See*, *e.g.*, *Thornton*, 28 F.4th at 1024; *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1288 (9th Cir. 2021); *Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312, 1318 (S.D. Fla. 2017); *Barnes v. Campbell Soup Co.*, 2013 WL 5530017, at *5 (N.D. Cal. 2013); *Keunzig v. Kraft Foods, Inc.*, 2011 WL 4031141, at *7 (M.D. Fla. 2011), *aff'd* 505 Fed. Appx. 937, 939 (11th Cir. 2013); *ConAgra Foods*, 2010 WL 2867393, at *7; *Meaunrit v. The Pinnacle Foods Group*,

*LLC*, 2010 WL 1838715, at *7 (N.D. Cal. 2010); *see also Riegel v. Medtronic, Inc*., 552 U.S. 312, 325 (2008) (holding that federal law preempted state claims because the FDA pre-approved the pharmaceutical label in dispute).  We agree with that approach and find Edwards's claims of deception and misrepresentation are preempted.

The Brats' label has passed the FSIS pre-approval process and is presumptively lawful and not false or misleading.  *See Keunzig*, 2011 WL 4031141, at *7 ("As such, any state law claim based on the contention that the labels are false or misleading is preempted, because such a claim would require Plaintiff to show that the information stated on the labels should have been presented *differently* (thus, imposing a *different and/or additional* labeling requirement than those found under the FMIA and the PPIA)."); *Thornton*, 28 F.4th at 1024 (allowing plaintiffs to challenge a FSIS-approved label as deceptive and misleading under state law "is precisely what [Section] 678 prohibits."); *Pinnacle*, 2010 WL 1838715, at *7 ("To allow a jury to pass judgment on Defendant's labels, notwithstanding the USDA's approval, would disrupt the federal regulatory scheme.").  All of Edwards's claims, based on the contention that Johnsonville's "100% PREMIUM PORK" statement on the Brats' label is misleading because the product is encased in beef collagen, are thus preempted.

We reject Edwards's argument that her claims are not preempted because the Brats' label in its current form only went through generic approval as opposed to sketch approval.  She argues that "generic approval" is a misnomer akin to a legal fiction because "generic approval does not require any FSIS review or affirmative

determination[.]" Dkt. # 23, at 7. But Edwards does not dispute that generic approval is the proper process for revised labels that do not contain "special statements and claims", she does not dispute that the Brats' label did not contain any such statements/claims so generic approval was the proper path, and she does not dispute that the Brats' label was generically approved. Edwards even notes that "if a seller has already obtained FSIS sketch approval for a label, it can freely add claims such as 'all,' '100%,' 'pure,' and 'premium' to the label without being required to resubmit the label to the FSIS for evaluation." *Id*. at 8.

Rather, according to Edwards, sketch approval is required to trigger federal preemption and generic approval is insufficient. But she cites no persuasive authority in support of that argument. Edwards relies on cases she believes "acknowledge that their outcomes would have been different had the labels at issue been granted generic, as opposed to sketch, approval." *Id*. at 9. For example, Edwards contends that *Cohen*, 16 F.4th at 1289, "makes clear that the FSIS's generic approval process is insufficient to trigger preemption." Dkt. # 23, at 10. But *Cohen* does not go nearly that far, instead finding that where there were "no affidavits or other documentary evidence showing that the label was submitted to and approved by FSIS[,]" and where the plaintiff argued the defendant "used the generic approval process for its labels, improperly bypassing FSIS review[,]" the court could not assume the "mere existence of the label" established FSIS approval. 16 F.4th at 1289. Here, in contrast, documentary evidence *does* show that the label was approved by FSIS *and* Edwards does not assert Johnsonville used

10

generic approval to "improperly bypass" FSIS review; Edwards acknowledges that the Brats' label was generically approved "consistent with the [FSIS] regulatory framework[.]" Dkt. # 23, at 8. Edwards fails to show that "affirmative" sketch review by FSIS is required to trigger preemption.[5] Congress devised the FSIS approval framework, and it is not our place to second guess it.

Johnsonville has demonstrated that Edwards's claims are preempted. The Court therefore does not consider the motion's additional arguments and dismisses the complaint with prejudice because any amendment would be futile. *See Phelps*, 244 F. Supp. 3d at 1319.

**<u>CONCLUSION</u>**

For the foregoing reasons, Johnsonville's motion to dismiss [19] is granted and the complaint is dismissed with prejudice. Civil case terminated. It is so ordered.

_Charles P. Kocoras_
_____
Charles P. Kocoras
United States District Judge

Date: February 1, 2024

---

[5] Although not dispositive, the fact that FSIS did grant sketch approval of the Cheddar Brats' label, which also states "Made with 100% Premium Pork" on the front and lists "beef collagen casing" in the ingredients list on the back, bolsters Johnsonville's arguments. *See* Dkt. # 20-4.